**E-FILED on** 3/21/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SERIOUS MATERIALS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SUPRESS PRODUCTS, LLC,<br><br>Defendant. | No. C-07-01328 RMW<br><br>ORDER DENYING DEFENDANT'S MOTION RE: EXCEPTIONAL CASE DETERMINATION; DENYING PLAINTIFF'S MOTION FOR SANCTIONS; GRANTING DEFENDANT'S MOTION TO TAX COSTS AGAINST PLAINTIFF<br><br>**[Re Docket No. 37, 88, 96]** |

Before the court are three motions that were brought by the parties after they settled and plaintiff Serious Materials, LLC ("Serious") stipulated to dismiss its patent infringement claims against defendant Supress Products, LLC ("Supress"). The first motion, filed by defendant Supress, asks the court to declare this case exceptional under 35 U.S.C. § 285 and to award Supress attorney's fees ("Exceptional Case Motion"). The second motion, filed by plaintiff Serious, asks the court to impose sanctions on Serious for bringing the Exceptional Case Motion ("Sanctions Motion"). The third motion, brought by Supress, asks the court to review the clerk's taxation of costs in the amount of $0.

## I. BACKGROUND

On March 7, 2007, plaintiff Serious filed the instant action against Supress for infringement of United States Patent No. 7,181,891 ("the '891 patent"). The '891 patent, titled "Acoustical Sound Proofing Material and Methods for Manufacturing Same" was originally filed on September 8, 2003 and issued on February 27, 2007. Serious claimed that the Supress product known as "Sound-Engineered Drywall" infringed the '891 patent and sought damages and injunctive relief. Supress counterclaimed for declaratory judgment that it does not infringe the '891 patent and that the patent is invalid.

The parties have a history with one another. Defendant Supress was founded by Bruce Donaldson, who was formerly a vice president of sales and marketing at Quiet Solution, which is now a division of plaintiff Serious. The named inventors of the '891 patent, Marc U. Porat and Kevin J. Surace, were the chairman and chief executive officer of Quiet Solution. Decl. Jonah Mitchell Supp. Exceptional Case Mot. ("Mitchell Decl."), Ex. A. In April 2005, Donaldson left Serious. Shortly thereafter, Donaldson founded Supress. Supress sold a composite wallboard that consisted of two pieces of gypsum wallboard glued together with a noise-reducing viscoelastic glue, a three-layer product. Later, Supress introduced a thicker specialty product, the accused "Sound-Engineered Drywall," which added another layer of glue and another piece of gypsum wallboard – a five-layer product comprising alternating layers as follows: gypsum-viscoelastic-gypsum-viscoelastic-gypsum.

In November 2005, shortly after Supress started selling its thicker drywall product, Quiet Solution sued Supress and Donaldson in Marin County Superior Court for trade secret misappropriation and sought a preliminary injunction based on a non-compete clause in Donaldson's employment contract with Quiet Solution. The court denied the preliminary injunction in December 2005 and thereafter in July 2006 the parties settled the trade secret case for a $100 payment by Supress, mutual releases and dismissals with prejudice. Mitchell Decl., Ex. S. Seven months later, Serious filed the instant suit based on the '891 patent on March 7, 2007, which was two weeks after the patent issued.

During the pendency of the instant lawsuit, Serious filed a third lawsuit against Supress in state court: a trademark complaint alleging that Supress's "key word" advertising constituted federal trademark infringement. After Supress removed the trademark action to federal court, the parties settled the case without payment by either party. The parties agreed to permissible and impermissible uses of key word advertising for both parties, and Serious dismissed the case with prejudice.

The parties filed a notice of stipulated voluntary dismissal in the instant action on November 13, 2007. Docket No. 32. On November 26, 2007, the court signed and filed the proposed stipulated voluntary dismissal and judgment. Docket No. 33. On December 10, 2007, Supress filed a motion for attorney's fees under 35 U.S.C. § 285 as well as a bill of costs. Although Supress did not assert inequitable conduct in its answer or counterclaims against Serious, Supress now bases its Exceptional Case Motion on alleged inequitable conduct before the PTO and litigation misconduct by Serious. By its motion, Supress seeks $468,034 in attorney's fees and costs through December 2007, and intends to seek attorney's fees and costs for time spent in briefing these motions and for appearing at the hearing. Decl. of Morgan Tovey Supp. Exceptional Case Mot. ("Tovey Decl.") ¶ 8.

## II. ANALYSIS

### A. Motion for Attorney's Fees Under 35 U.S.C. § 285

35 U.S.C. § 285 provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." "The determination of whether a case is exceptional and, thus, eligible for and warranting an award of attorney fees under § 285 is a two-step process in which the district court must (1) determine whether there is clear and convincing evidence that a case is exceptional, a factual determination reviewed for clear error, and (2) if so, then determine in its discretion whether an award of attorney fees is justified." *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1366-67 (Fed. Cir. 2007) (citing *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998)).

#### 1. Timeliness

As an initial matter, Serious contends that Supress's motion is not timely under the Federal Rules of Civil Procedure or this district's local rules because it was brought 27 days after the parties filed their notice of Serious's voluntary dismissal of the suit. Supress e-filed the notice of voluntary

1 dismissal titled "[Proposed] Stipulated Voluntary Dismissal and Judgment" for the court's signature
2 on November 13, 2007. Docket No. 32. The court signed and entered the Stipulated Voluntary
3 Dismissal and Judgment on November 26, 2007. Docket No. 33. Supress filed its motion for
4 attorney's fees on December 10, 2007. Docket No. 37.

Under Fed. R. Civ. P. 54(d)(2)(B) and N.D. Cal. Civ. L.R. 54-6(a), a motion for attorney's fees must be served and filed within 14 days after entry of judgment by the court. Serious asserts that the date the parties filed their notice of dismissal is the date of judgment for purposes of Rule 54(d)(2)(B) and L.R. 54-6(a) and that Supress's motion for attorney's fees is thus untimely because the date of the notice was November 13, 2007 and Supress's motion was filed on December 10, 2007. Supress contends, however, that its motion is timely because its motion was filed 14 days after the court signed and entered the Stipulated Voluntary Dismissal and Judgment.

Rule 54(d)(2)(B) provides, "Unless otherwise provided by statute or order of the court, [a motion for attorney's fees] must be filed no later than 14 days after entry of judgment . . .". Rule 41(a)(1) provides that "an action may be dismissed by the plaintiff without order of the court . . . (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action." Serious contends that the November 13, 2007 notice operates as an entry of judgment under Rule 54 to start the 14-day period for filing attorney's fees.

The court disagrees. Although it is true that the plaintiff may dismiss the action by filing a stipulation of dismissal signed by all the appearing parties without further order of the court, the parties clearly intended that the court take further action to enter the judgment. The document, signed by both parties, is titled "[Proposed] Stipulated Voluntary Dismissal and Judgment" and provides a block for signature by the court. Accordingly, the court finds that judgment was entered on November 26, 2007, when it was signed by the undersigned and filed. Defendant's motion was filed 14 days after the court entered judgment and is thus timely under Rule 54 and L.R. 54-6(a)

### 2.    Exceptional Case

"A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that

violates Fed. R. Civ. P. 11, or like infractions." *Brooks Furniture Mfg, Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) (emphasis added).  However, "[a]bsent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.* (citing *Professional Real Estate Investors v. Columbia Pictures Indus*, 508 U.S. 49, 60-61 (1993) (defining "sham" litigation)).  The Federal Circuit has declined to expand the scope of exceptional cases to include "a patentee's bad-faith business conduct toward an accused infringer prior to litigation." *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003).

### a.     Inequitable Conduct

Inequitable conduct must be pleaded with particularity. *Ferguson Beuregard/Logic Controls, Inc., v. Mega Sys.*, LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003).  To prove inequitable conduct, a defendant must show by clear and convincing evidence, that the patentee engaged in "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Dayco Prods., Inc. v. Total Containment, Inc*., 329 F.3d 1358, 1362 (Fed. Cir. 2003).[1]

As recently clarified by the Federal Circuit, materiality is measured under two different standards: "[I]f a misstatement or omission is material under the new Rule 56, it is material. Similarly, if a misstatement or omission is material under the 'reasonable examiner' standard . . . it is also material." *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309, 1316 (Fed. Cir. 2006).  Under the current Rule 56, 37 C.F.R. § 1.56(b) (2006),

> information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim, or
> (2) It refutes, or is inconsistent with, a position the applicant takes in:
>      (i) Opposing an argument of unpatentability relied on by the Office, or
>      (ii) Asserting an argument of patentability.
> A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given

---

[1] As discussed in further detail below, Supress did not plead inequitable conduct in its answer and counterclaims.  It raised the issue for the first time in the instant motion for attorney's fees.

ORDER DENYING DEFENDANT'S MOTION RE: EXCEPTIONAL CASE DETERMINATION; DENYING PLAINTIFF'S MOTION FOR SANCTIONS; GRANTING DEFENDANT'S MOTION TO TAX COSTS AGAINST PLAINTIFF — No. C-07-01328 RMW MAG         5

> to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

Under the reasonable examiner standard, "information is material where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1364 (Fed. Cir 2007) (quoting 37 C.F.R. § 1.56(a) (1991)).

"The intent element of inequitable conduct requires that 'the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.'" *Id.* (quoting *Impax Labs. v. Aventis Pharm. Inc.*, 468 F.3d 1366, 1374-75 (Fed. Cir. 2006)).

Should the court find "that the requirements of materiality and intent have been established by clear and convincing evidence, it must then 'balance the equities to determine whether the patentee has committed inequitable conduct that warrants holding the patent unenforceable. *Id.* (quotation and citation omitted). Under the balancing test, "[t]he more material the omission or the misrepresentation, the lower the level of intent required to establish inequitable conduct, and vice versa." *Id.* (citing *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997)).

Supress asserts that Porat and Surace, the named inventors on the '891 patent, engaged in inequitable conduct in their dealings with the PTO in two different ways.   First, Supress asserts that the inventors falsely represented that their claimed invention provided superior sound transmission reduction by citing STC (sound transmission class) ratings that were obtained from tests that the inventors knew were not compliant with the relevant ASTM E90 testing protocol.  Second, Supress contends that Porat and Surace falsely represented by way of their inventor's oaths that they were the only true inventors of the subject matter of the '891 patent.

### i.      Testing Protocol

All of the independent claims of the '891 patent claim "a laminated structure."  '891 Patent, cls. 1, 6, 7, 16.  Each of the independent claims appears to claim a five-layer sandwiched structure comprising three layers of non-metallic material alternating with two layers of a viscoelastic glue

United States District Court
For the Northern District of California

(i.e., material-viscoelastic-material-viscoelastic-material).  *Id.*  This structure as claimed is "used for constructing walls, floors, or ceilings or doors."  *Id.*, cls. 1, 6, 16.

The specification of the '891 patent states that the invention relates to "soundproofing materials of a novel laminar construction which significantly improves the soundproofing ability of walls, ceilings, floors and doors, thereby to prevent the transmission of sounds from one area to another."  '891 patent, col. 1:7-12.  The Background section of the specification describes the importance of soundproofing, stating

> Noise is emerging as both an economic and public policy issue. Soundproof rooms are required for a variety of purposes. For example, apartments, hotels and schools all require rooms with walls, ceilings and floors that minimize the transmission of sound thereby to avoid annoying people in adjacent rooms. . . .  One measure of the severity of the problem is the widespread emergence of city building ordinances that specify a minimum Sound Transmission Class ("STC") rating.

*Id.*, col. 1:21-27.

The patent specification describes STC numbers as "numbers which are used in the architectural field to rate partitions, doors and windows for their effectiveness in blocking sound. The number assigned to a particular partition design as a result of STC testing represents a best fit type of approach to a set of curves that define the sound transmission class."  *Id.*, col. 6:57-63.  It sets forth that the STC numbers are "defined by ASTM E90 laboratory test for sound measurements obtained in 1/3 octave bands, and ASTM E413 for calculating "STC" (Sound Transmission Class) numbers from the sound transmission loss in each partition, and these standards are available on the internet at http://www.astm.org."  *Id.*, col. 6:65-7:4.

Figure 3 describes a configuration for an acoustical soundproofing panel arranged as follows: gypsum board, viscoelastic QuietGlue, mass loaded vinyl, viscoelastic Quiet Glue, gypsum board.  *Id.*, col. 6:7-15.  The specification notes that the use of two panels in the configuration described in Figure 3 would result in an STC of 54, while "a similar configuration with standard 5/8 inch drywall on both sides of standard 2x4 construction yields an STC of 34."  *Id.*, col. 7:21-26.  The specification goes on to assert, "Accordingly, this invention yields a 20 STC point improvement over standard drywall in this particular construction."  *Id.*, col. 7:27-29.

1    Supress presents evidence that the testing that yielded the STC numbers cited in the
2 specification was set up using a 4' x 4' panel of sheetrock. Mitchell Decl., Ex. N. Porat was told in
3 an July 29, 2003 e-mail that Quiet Solution should test 9' x 14' panels because "[i]t's not worth
4 fighting the test standards be they right or wrong." *Id.*, Ex. O.[2] The email noted that there would be
5 STC point differences between testing a 9' x 14' panel and an 8' x 8' or 4' x 4' panel that would reflect
6 negatively on the STC rating were the recommended panel size to be used. *Id.* ("I doubt that this
7 test size will cost you more than one STC point over an 8 x 8 specimen, although you may lose a
8 few points from your 4 x 4 test."). Based on these documents, Supress asserts that the inventors
9 knowingly misrepresented the STC value achieved by the preferred embodiment of in the '891 patent
10 specification and thereby misled the patent office.

11    Serious points out that the patent specification discloses that the assemblies tested consisted
12 of 4' x 4' panels. '891 patent, Figs. 5-10 (noting that the specimen area is "16 sq. ft."). It also notes
13 that the specification never states that the panels were tested in compliance with the ASTM E90
14 testing protocol and cites to a website from which the protocol is available (albeit for a fee), *id.* col.
15 7:65-8:4. Accordingly, it asserts that the specification misrepresents nothing with regard to the
16 testing standards used to achieve the STC numbers cited.

17    There is evidence that the inventors were aware that their testing of the disclosed invention
18 was not compliant with the ASTM E90 testing protocol. However, as Serious asserts, the
19 specification discloses the size of the assemblies tested and only asserts that the ASTM E90 testing
20 protocol is an appropriate measurement protocol, not that the assemblies were tested in compliance
21 with the protocol. The specification may have been artfully worded to avoid misrepresentation to
22 the PTO that the STC numbers were obtained using the ASTM E90 testing protocol, which certainly
23 raises some question whether the inventors sought to mislead the examiner regarding the STC
24 numbers attainable by use of the invention. However, although Supress asserts that the July 29,
25 2003 e-mail demonstrates that a smaller sample size may have had the effect of reducing the STC
26 rating achieved from the ASTM E90 test, it has provided no clear and convincing evidence that a

---

[2] The parties do not appear to dispute that the appropriate panel testing size for the E90 testing protocol is 9' x 14'.

different sample size would have necessarily resulted in a different STC number, so the court cannot conclude that any misrepresentation necessarily occurred or that the inventors intended to mislead.

Even assuming there was a misrepresentation, Supress has not provided clear and convincing evidence that the examiner found the test results to be material to the issuance of the patent. While it seems clear that the patent specification was drafted in order to emphasize that the invention disclosed resulted in increased performance under the ASTM E90 Testing Protocol, there is no indication that the examiner found the STC numbers provided to be material during prosecution of the patent claims or relied on those numbers in permitting the claims to issue.

To find that the patentee engaged in inequitable conduct, the court must find both that the omission was material and that there was sufficient intent. Intent may be inferred from evidence presented, "[t]he more material the omission or misrepresentation, the lower the level of intent required to establish inequitable conduct and vice versa." *Cargill, Inc.*, 476 F.3d at 1364. Here, although the evidence establishes that Surace and Porat were aware of the ASTM testing methods and fact that the patent specification notes the improved acoustical qualities of the claimed invention in terms of STC numbers, without concrete evidence that the STC numbers or test results were material to the examiner, it is difficult to infer sufficient intent to deceive sufficient to establish inequitable conduct. Because clear and convincing evidence does not establish either materiality or intent to deceive, the court does not undertake the balancing step. The court therefore concludes that Supress has failed to establish inequitable conduct by the requisite clear and convincing evidence with respect to the STC numbers.

### ii.     Inventorship

Supress also contends that Serious engaged in inequitable conduct by submitting false information regarding the inventors' sole inventorship of the '891 patent. It asserts that, contrary to their inventor's oaths swearing that they were the true and only joint inventors of the '891 patent subject matter, third parties other than Surace and Porat are actually co-inventors.

Supress presents email from Surace dated four months prior to the inventors' oaths acknowledging that neither he nor Porat had a background in construction. Surace states, "the principals of Quiet Solution (myself included) do not have a construction background. We have,

1  until last year, run several large high-tech (software as well as hardware) companies . . .so we are
2  learning this business." Mitchell Decl., Ex. M. In the same email, Surace states, "We do, however,
3  have a world class engineering team, including PhDs developing new polymers and products for
4  sound damping. So we hope to improve the state of the art." *Id.* Supress contends that this
5  statement identifies that the true inventors were not Surace and Porat, but the engineering team
6  working for them. It also asserts that an email sent by Porat indicates his ignorance of basic
7  architectural acoustic principles and thus that he could not be an inventor of the '891 patent.
8  Mitchell Decl., Ex. N ("Typically, when you double the density of a material, e.g. sheetrock, you
9  pick up 6 db he says. So if 2 layers of sheetrock is STC-34, 4 layers would be STC-40, 8 layers
10 would be STC-46 etc. I don't know why this is the case – you should talk to him.").

11  The court does not find that this evidence clearly and convincingly demonstrates that Porat's
12 inventors' oath was false. Although the email seems to indicate that Porat did not himself know the
13 principle that is the subject of his email, the court cannot necessarily conclude that his lack of
14 understanding of this principle means that he did not correctly attest to being a joint inventor with
15 Surace. Nor does the evidence presented convince the court that anyone other than Surat and Porace
16 were co-inventors so as to render the inventor's oaths false. As Supress itself acknowledges, "the
17 technology at issue in this case is not rocket science." Mot. at 3. Even considering the evidence that
18 Surace and Porat did not have a background in construction or acoustical design , it does not
19 necessarily follow that they could not have invented the laminate structure claimed in the '891
20 patent.

21  Supress further asserts that Serious produced nothing in discovery to demonstrate that Porat
22 was an inventor of the material claimed in the '891 patent. Exceptional Case Mot. at 20 ("Indeed,
23 Plaintiff's 'evidence' that Porat and Surace conceived of, and reduced to practice, their claimed
24 invention is more instructive for what it is missing. Curiously absent from Plaintiff's conception
25 'evidence' are inventor notebooks and design, engineering and 'as-built' drawings."). Although it
26 points to what types of evidence of conception that it expected to find but did not, Supress fails to
27 demonstrate by clear and convincing evidence that Porat was not properly named as an inventor of
28 the '891 patent or that his inventorship oath was false.

**United States District Court**
For the Northern District of California

1  Supress also contends that a continuation in part application ("CIP") filed from the parent
2  application that matured into the '891 patent omitted Porat as the inventor even though the
3  specification for the CIP "was, for the most part, identical to the parent application," incorporated
4  the parent application by reference and contained a claim "which substantially overlapped with a
5  claim in the parent application." The court does not find this argument convincing. The mere fact
6  that a CIP was filed naming a new inventor does not provide evidence that Porat was not an inventor
7  of the parent application.

8  Because the court finds that Supress has not presented clear and convincing evidence that
9  there was any deception, it concludes that Supress has failed to meet its burden that Serious engaged
10 in inequitable conduct with respect to the inventor's oaths.

### b. Litigation Misconduct: Bad Faith, Vexatious Tactics

12 "If there is clear and convincing evidence that a plaintiff has brought a baseless or frivolous
13 suit against an accused infringer, that is a sufficient basis to require a district court to deem the case
14 exceptional under § 285." *Digeo*, 505 F.3d at 1367 (citing *Forest Labs., Inc. v. Abbott Labs.*, 339
15 F.3d 1324, 1329-30 (Fed. Cir. 2003)). "A frivolous infringement suit is one which the patentee
16 knew or, on reasonable investigation, should have known, was baseless." *Haynes Int'l Inc. v. Jessop*
17 *Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993). Supress contends that Serious engaged in bad faith
18 litigation tactics by initiating and continuing to prosecute this litigation because it either
19 intentionally or recklessly sued on a patent that it knew as unenforceable for inequitable conduct or
20 invalid as anticipated or obvious. As set forth above, the court finds that Supress has failed to
21 present clear and convincing evidence of inequitable conduct in procuring the '891 patent.
22 Therefore, the court turns to considering whether Serious knew or should have known that its
23 patents were invalid as obvious or anticipated. *Haynes*, 8 F.3d at 1579. "Merely negligent conduct
24 does not suffice to establish that a case is exceptional." *Digeo*, 505 F.3d at 1369 (citing *Mach. Corp.*
25 *of Am. v. Gullfiber AB*, 774 F.2d 467, 473 (Fed. Cir. 1985)).[3]

---

[3] Supress argues that Serious should have known that it was initiating litigation a patent that it should have known would be found obvious because the Supreme Court's decision in *KSR International Co. v. Teleflex, Inc.*, 127 S.Ct. 1727, 1734 (2007), was issued before Serious filed suit.

1    Supress argues that there was nothing novel about the multi-layer laminate construction
2 claimed by Surace and Porat when they filed their patent application in September 2003. Serious
3 points to multiple patents that disclose that the use of viscoelastic materials provides sound
4 dampening qualities. Mitchell Decl., Ex. C, U.S. Patent No. 5,256,223, issued October 26, 1993 ("It
5 is well known that constrained viscoelastic layer damping treatments provide an effective meas of
6 passive control for structural vibration."); *id.*, Ex. D, U.S. Patent No. 5,262,232, issued November
7 16, 1993 ("It has long been known that the vibration of component parts of devices and structures
8 that vibrate . . . can be reduced by the attachment of a layer of viscoelastic material."). Supress also
9 points to a number of references that disclosed multi-layer laminate configurations involving
10 alternating construction materials with viscoelastic glues. *See id.*, Exs. G, H, I, J (all disclosing
11 laminated structures of construction materials and viscoelastic glue). While some of these
12 references describe a "plurality" of layers and others even describe a 3-layer laminate comprised of
13 gypsum-viscoelastic-gypsum, none of these references discloses the 5-layer gypsum-viscoelastic-
14 gypsum-viscoelastic-gypsum laminate claimed in the '891 patent.

15    Supress particularly points to U.S. Patent No. 4,663,224, issued May 5, 1987 ("the '224
16 patent") which it contends anticipates the '891 patent claims. Even assuming that the '224 patent
17 anticipates or renders obvious the '891 patent, Serious asserts that it was not aware of this prior art
18 and was only informed by Supress of its existence on October 30, 2007. The '224 patent was not
19 disclosed in Supress's invalidity contentions served on Serious on August 13, 2007. *See* Am. Decl.
20 John Cooper Supp. Mot. Sanctions, Ex. G. On October 31, 2007, the day after Supress disclosed the
21 '224 patent as anticipating prior art, the parties began to exchange communications regarding
22 settlement of the suit. *Id.* ¶¶ 15-16 . Serious accepted the terms of the settlement proposed by
23 Supress by letter dated November 9, 2007. *Id.*, Ex. L. The parties subsequently filed the stipulation
24 of dismissal on November 13, 2007.

25    The court has no reason to disbelieve Serious's assertion that it did not know about the '224
26 patent prior to its disclosure on October 30, 2007 by Supress. It further finds that Serious could

---

28 This argument is unpersuasive. Contrary to Supress's assertion, KSR issued on April 30, 2007 – approximately two months after Serious filed this suit on March 7, 2007.

ORDER DENYING DEFENDANT'S MOTION RE: EXCEPTIONAL CASE DETERMINATION; DENYING PLAINTIFF'S MOTION
FOR SANCTIONS; GRANTING DEFENDANT'S MOTION TO TAX COSTS AGAINST PLAINTIFF — No. C-07-01328 RMW
MAG                                            12

have reasonably believed that the '891 patent was neither anticipated nor obvious based on the '224 patent or the other prior art Supress cites and that Serious did not act wrongfully by continuing to pursue the litigation until it accepted Supress's offer to settle on November 9, 2007.

Finally, Supress points to an opinion received by Serious from the International Searching Authority regarding the foreign counterpart to the '891 patent. The opinion, which issued before Serious initiated litigation on the '891 patent against Supress, stated with regard to claims 10 and 12 (claims that were not at issue in the instant action), that in light of two prior art references cited to the PTO,

> [i]t would have been obvious to one having ordinary skill in the art at the time the invention was made to have one more laminated structure for the external layer comprising a first layer of metal, a second layer of viscoelastic glue, a third of gypsum, since it has been held that mere duplication of essential parts of a device involves only routine skill in the art. The motivation for doing so would have been to maximize to the sound absorption on the first layer.

Mitchell Decl., Ex. HH at SM02046-47. Supress contends that based upon this opinion Serious should have known that the '891 patent as a whole would have been found to be obvious. First, the court agrees with Supress that this opinion only regards claims 10 and 12, which were not asserted against Supress. Second, this opinion of obviousness is based on two specific prior art references, Kirshner and Hartman, both U.S. Patents cited in the prosecution of the '891 patent. Serious amended its claims and distinguished Kirshner during prosecution of the '891 patent. Cooper Decl., Ex. B at SM01244-51. Thus, the ISA opinion does not necessarily put Serious on notice that its issued '891 patent, which had been issued over the same prior art references, would be found to be obvious in light of the presumption that issued United States patents are valid. Serious's decision to litigate based on the '891 patent is not objectively baseless and does not necessarily demonstrate bad faith.

Based on the evidence presented, the court does not conclude that this was an exceptional case due to bad faith litigation tactics by Serious.

**B.     Motion for Sanctions**

Litigants are subject to Rule 11 sanctions for, among other reasons, presenting to the court "claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a

1  nonfrivolous argument for the extension, modification, or reversal of existing law or the

2  establishment of new law," or factual contentions that lack evidentiary support. Fed. R. Civ. P.

3  11(b)(2) & (3). Serious contends that Rule 11 sanctions are appropriate against Supress because its

4  Exceptional Case Motion is (1) legally frivolous and (2) lacks evidentiary support.

### 1. **Legally Frivolous**

Serious initially argues that the inequitable conduct upon which Supress in part bases its inequitable conduct motion was never pled. To the extent that Serious seeks to contend that Supress has waived its claim for attorney's fees under 35 U.S.C. § 285, the court disagrees. "At the pretrial stage, there is no prevailing party, and thus, any claim for attorneys' fees would be premature." *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1370 (Fed. Cir. 2004); *cf. Brasseler, U.S.A. I, L.P., v. Stryker Sales Corp.*, 182 F.3d 888, 892 (Fed. Cir. 1999) (rejecting an argument that a claim for attorney fees was waived by failing to raise the claim in a successful summary judgment motion, holding that "until the 'prevailing party' is known, a party that has pled a claim for attorneys' fees under Section 285 cannot be expected to request such fees").

The court acknowledges that the circumstances presented in this case differ slightly: Supress bases its motion for attorney's fees in part on inequitable conduct by Serious in obtaining the '891 patent. Although it did not assert inequitable conduct in its answer and counterclaim, Supress contends that it did not determine that it had a claim for inequitable conduct until discovery revealed that Porat and Surace were aware that the ASTM E90 tests were conducted on a smaller sample size than set forth in the testing protocols. Supress asserts that had the case not settled, it would have sought leave to amend its answer and counterclaims to plead inequitable conduct based on this discovery.[4]

---

[4] On February 8, 2008, after the briefing had closed on both the Exceptional Case Motion and the Sanction Motion, Supress filed a request asking the court to take judicial notice of pleadings filed by Serious's counsel, Mr. Cooper of Farella Braun and Martell, in a separate case, *Dolby Labs., Inc. v. Lucent Technologies, Inc.*, Case No. 01-20709. These pleadings include a motion for attorney's fees under 35 U.S.C. § 285 based on a claim of inequitable conduct that Farella Braun and Martell had not previously pled. The court sustains Serious's objection and denies this request as untimely under L.R. 7-3(d) ("once a reply is filed, no additional memoranda, papers, or letters may be filed without court approval").

ORDER DENYING DEFENDANT'S MOTION RE: EXCEPTIONAL CASE DETERMINATION; DENYING PLAINTIFF'S MOTION FOR SANCTIONS; GRANTING DEFENDANT'S MOTION TO TAX COSTS AGAINST PLAINTIFF — No. C-07-01328 RMW
MAG                                                       14

Given that Supress asserts inequitable conduct based on both the late-discovered test protocol non-compliance and the inventors' allegedly false oath that they were the sole inventors, the court is somewhat doubtful that Supress could not have asserted an inequitable conduct claim prior to discovering the email regarding the sample size for the ASTM E90 test.  Nevertheless, it does not find under the circumstances that Supress waived its claim for attorney's fees to the extent that the claim is based on inequitable conduct.  Further, although the court certainly does not endorse Supress's approach in this case of seeking to litigate the issue of inequitable conduct after the case has settled, the court does not find Supress's position to be entirely legally frivolous.

### 2. Lacking Evidentiary Support

The court also does not find that this motion is entirely without evidentiary support such that Rule 11 sanctions are warranted.  While the court does not find that this case is exceptional, it also does not find that Supress's claims of inequitable conduct and bad faith litigation were so devoid of support as to warrant sanctions under Rule 11.  As discussed above, Supress has presented evidence in support of its arguments that Serious engaged in inequitable conduct before the PTO and in bad faith litigation by initiating this action knowing that the '891 patent may be invalid as obvious or anticipated.  Merely because Supress was unable to carry its burden of proof to show that Serious engaged in inequitable conduct with respect to the '891 patent or bad faith litigation tactics does not mean that its contentions are without evidentiary support.  The court thus concludes that Rule 11 sanctions against Supress are not warranted.

### C. Motion re: Taxation of Costs

Under Fed. R. of Civ. P. 54(d), "costs other than attorneys' fees shall be allowed as of course to the to the prevailing party unless the court otherwise directs."  The parties do not dispute that Supress is the prevailing party in this case as the case was dismissed with prejudice by Serious with a covenant not to sue Supress, its customers, distributors or successors.

Supress filed its Bill of Costs on December 10, 2007 seeking $1,867: $178 for fees for service of subpoena and $1,689 for exemplification and copies of papers obtained for use in the case. Docket No. 40.  On January 25, 2008, the Clerk taxed costs in the amount of $0.00 with a notation "no judgment entered."  Supress asks the court to review the Clerk's declination to tax costs.

As with Supress's Exceptional Case Motion, Serious contends that the Bill of Costs was untimely. L.R. 54-1(a) states that a bill of costs must be filed within 14 days after the entry of judgment. For the reasons set forth above, the court finds that the Bill of Costs is timely.

Serious also contests the Bill of Costs on the basis that Supress has not submitted sufficient documentation to support its claim of $1,689 for exemplification and copies for papers obtained for use in the case. Supress submitted invoices supporting the amount claimed and a declaration required by L.R. 54-3 stating that these costs "are correct and were necessarily incurred in this action and the services for which fees have been charged were actually and necessarily performed." *See* Docket No. 40. Although the invoices do not specify exactly what documents were copied and do not specifically exclude "motions, pleadings, notices, and other routine case papers," the court sees no reason to question the declaration signed by Supress's counsel that the costs are compliant. It therefore rejects Serious's contention that Supress's Bill of Costs is not sufficiently supported and overrules its objections.

The court thus finds the Clerk's declination to tax costs to be in error and taxes costs in the amount of $1,867 as originally requested by Supress.

### III. ORDER

For the foregoing reasons the court:

1. denies Supress's Exceptional Case Motion and declines to award attorney's fees;
2. denies Serious's Sanctions Motion; and
3. taxes costs against Serious in the amount of $1,867.

DATED:     3/21/08

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| John L. Cooper | jcooper@fbm.com |
| Jeffrey M. Fisher | jfisher@fbm.com |
| June Tsu-Ain Tai | jtai@fbm.com |

**Counsel for Defendants:**

| | |
|---|---|
| Jonah Dylan Mitchell | jmitchell@reedsmith.com |
| Morgan William Tovey | mtovey@reedsmith.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 3/21/08                             /s/ MAG
                                               **Chambers of Judge Whyte**